# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KATHRYN MATTESON, a/k/a,
KATHRYN MATTESON KLEIN

      Plaintiff,                       Case No. 10-cv-10541
                                        Hon. Gerald E. Rosen

v.

NORTHWEST AIRLINES, INC.,

      Defendant.
_____/

# OPINION AND ORDER
# GRANTING DEFENDANT NORTHWEST AIRLINES, INC.'S
# MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on       April 26, 2011

PRESENT:   Honorable Gerald E. Rosen
                    United States District Judge

## I. INTRODUCTION

Plaintiff Kathryn Matteson commenced this suit on February 9, 2010, asserting a premises liability claim against Defendant Northwest Airlines, Inc. ("Northwest") arising out of a September 17, 2009 incident in which she slipped and fell on a substance and fractured her right hip while exiting a moving walkway at Detroit Metropolitan Airport's McNamara terminal. The Court's jurisdiction is based on diversity of citizenship between the parties. *See* 28 U.S.C. § 1332(a).

Through the motion now pending before the Court, Northwest seeks summary judgment in its favor on Plaintiff's state-law negligence claim. In support of this motion, Northwest argues that Plaintiff cannot establish that Northwest breached any duty owed to her, because the allegedly dangerous condition was open and obvious. In response, Plaintiff contends that the condition did not meet the standards for the open and obvious doctrine to apply. Additionally, Plaintiff argues that "special aspects" existed which made the condition an unreasonably high risk of severe harm.

Northwest's motion for summary judgment has been fully briefed by the parties. Having reviewed the parties' briefs and accompanying exhibits, as well as the record as a whole, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in the written record, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Northwest's motions "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan.

## II. **FACTUAL BACKGROUND**

On Thursday September 17, 2009, Plaintiff Kathryn Matteson , a 54-year-old woman, was walking in the McNamara terminal at the Detroit Metropolitan Wayne County Airport on her way to board a return flight to Florida, where she resides. Her co-workers, Eric Meiners and Joe McGrath accompanied her. Shortly after exiting a moving walkway, she slipped on something that had been spilled and fell, landing on her right hip. At the time of the fall, Plaintiff was pulling her wheeled carry on bag with her left hand, had a computer bag over her right shoulder, and was looking straight ahead.

After falling, she touched the ground beneath her and felt a gel-like substance on the ground. Although her co-workers described the substance as a green or light green liquid, like Mountain Dew or Gatorade, Plaintiff maintains it was a clear gel-like substance without any color. Neither her co-workers nor passerby Danny Milton, saw the substance prior to Plaintiff's fall, but all three witnesses claim the spill was visible from a distance and between one and two feet wide.[1]

A woman, believed to be an employee of one of the nearby restaurants, approached Plaintiff and the three witnesses, informed them that the spill had been reported, and began wiping the spill with paper towels. Meiners and McGrath helped Plaintiff get up and move to a nearby seating area. Meiners then reported the incident to two gate agents and requested emergency assistance. The gate agents stated they were aware of the spill, the appropriate entity had been notified, and help was on the way. Airport emergency medical services arrived and asked to take Plaintiff to the local hospital. Plaintiff responded that she wished to go to the hospital in Tampa, Florida instead. A paramedic assisted Plaintiff to the plane, and Plaintiff flew to Tampa, where her fiancé took her the hospital. Plaintiff claims to have undergone femoral neck fracture surgery on September 18, 2009 and continues treatment with an orthopedic surgeon in Tampa.[2]

---

[1] The witnesses did not state specifically from what distance the spill was visible.

[2] In her response, Plaintiff claims to have required femoral neck fracture surgery the day after the incident and cites her deposition testimony to support this claim. A review of the deposition transcript does not specify the type of surgery Plaintiff required, but Defendant does

As a result of the fall, Plaintiff claims to have suffered serious injuries, including a fracture to the right femoral neck, requiring open reduction and internal fixation as well as a right rotator cuff injury.  Plaintiff claims to have expended large sums of money for medical treatment, which will continue in the future, and she claims a loss of both past and future earnings as a result of her injuries.  Finally, Plaintiff claims the injuries from her fall have rendered her disabled and unable to attend to her daily affairs and caused her to suffer severe physical pain and suffering as well as mental and emotional distress, which will continue into the future.

### III.  ANALYSIS

**A.     Standards Governing Northwest's Motion**

Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[3]  As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322,

---

not dispute any of the medical treatment Plaintiff has required as a result of her fall.

[3] On December 1, 2010 a new version of Fed. R. Civ. P. 56 took effect.  Due to the parties' submission of summary judgment motions prior to the effective date, the Court's opinion and order is decided under, and cites, the old rule.

106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but "must-by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks and citation omitted).

**B.     Plaintiff's premises liability claim fails as a matter of law**

Because this is a diversity action, the Court applies state law "in accordance with the controlling decisions of the state supreme court." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). The parties do not dispute that Michigan law controls.

A premises liability claim first requires that a plaintiff prove that the defendant owed a duty to the plaintiff. *Berryman v. K Mart Corp.*, 193 Mich. App. 88, 91-92, 483 N.W.2d 642 (1992). In Michigan, a property owner's duty to a person who enters the

premises depends on the visitor's status. *Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 596, 614 N.W.2d 88, 91 (2000). An invitee is "a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception." *Id*. at 92. Here, the parties do not dispute Plaintiff's status as an invitee.

> The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards.

*Id.*

Generally, a property owner's duty of care does not extend to protecting an invitee from open and obvious dangers. *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516, 629 N.W.2d 384, 386 (2001). The open and obvious doctrine is not an "exception" to the duty generally owed to invitees, but rather an integral part of the definition of that duty. *Id.* Where special aspects of a condition make even an open and obvious risk unreasonably dangerous, the property owner has a duty to take reasonable precautions to protect invitees from that risk. *Id.* The test for determining whether a condition is open and obvious is whether "an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection." *Novotney v. Burger King Corp.*, 198 Mich. App. 470, 475, 499 N.W.2d 379, 381 (1993).

Here, Northwest argues that the substance on the terminal floor was an open and obvious danger. In support of its argument, Northwest cites statements from both Plaintiff and the three witnesses, who stated they could see the substance. The fact that these individuals noticed the substance *after* Plaintiff's fall is irrelevant to the Court's analysis, because as this Court has recently held, the "relevant fact is simply that the [danger] was visible" upon casual inspection. *Njoku v. Northwest Airlines, Inc.*, 2011 WL 1458002, slip op. at *5 (E.D. Mich. April, 15, 2011); *Novotney*, 499 N.W.2d at 475.

Plaintiff herself testified that she "was looking straight ahead" when she fell. (Pl.'s Dep. 17:19-20, Nov. 12, 2010.) Additionally, in her response to interrogatory No. 12, Plaintiff stated that after she fell, "[she] saw what looked like a clear gel on the floor. It was thick and clear." (Def.'s Mot. Summ. J. 5.) Unfortunately for Plaintiff, the critical legal question is not whether a person of ordinary intelligence is expected to constantly inspect the ground while walking, but whether a person of ordinary intelligence *"[w]ould* . . . have been able to discover the danger and the risk presented upon casual inspection." *Novotney*, 499 N.W.2d at 475. (emphasis added). Based on the testimony of the three witnesses and Plaintiff herself, the Court finds that there is no question of fact that the spilled substance was discoverable if Plaintiff, or any other person of ordinary intelligence, would have simply looked at the ground in front of her, and therefore, the condition was open and obvious.

The parties are strongly divided on whether the substance was clear or possessed any color. Viewing the disputed testimony in the light most favorable to Plaintiff, the

7

Court finds that even a clear spill in Plaintiff's case would have been open and obvious. Plaintiff cites four Michigan Court of Appeals opinions in support of her argument that clear spills are not open and obvious as a matter of law. This Court finds none of these opinions persuasive to Plaintiff's case. In addition to all of the cited opinions being unpublished, each opinion is factually different from the present matter in critical ways. In *Williams*, the plaintiff was specifically looking down at her feet when she slipped and fell, which provides direct factual support to the claim that the spill was not discoverable upon casual inspection. *Williams v. Frankenmuth Bavarian Inn, Inc.*, No. 283898, 2008 WL 4891414, at *1 (Mich.App. Nov. 13, 2008). As previously discussed, Plaintiff in the present matter admits to looking straight ahead when she fell.

In *Talbot*, the plaintiff claimed to be looking "straight ahead and on the floor" when she slipped and fell on a two to three inch strip of water, which she could only notice from two inches above the floor. *Talbot v. RT Detroit Franchise L.L.C.*, No. 265726, 2006 WL 1084402, at *1 (Mich.App. April 25, 2006). Additionally, the only testimony regarding the condition in *Talbot*, came from the plaintiff herself. *Id.* Here, once again, Plaintiff was not looking at the floor, and three witnesses testified that the spilled substance was visible from some distance away.

In *Snyder*, the Michigan Court of Appeals disagreed with the defendant's argument that it could not be held liable under the open and obvious doctrine, "because plaintiff stated that if she had looked she would have seen the puddle before she fell . . ." *Snyder v. Jack's Fruit Market*, No. 188581, 1997 WL 33354547, at *2 (Mich.App. Jan.

8

17, 1997). Although this ruling has not yet been overturned, this Court finds the ruling in *Snyder,* which is an unpublished opinion from 1997, in direct contradiction to the well-established open and obvious doctrine stating that if an individual would have seen the condition upon casual inspection, it is open and obvious as a matter of law.[4] *Novotney*, 499 N.W.2d at 475.

Even if the Court were to accept the narrow holding in *Snyder*, it is readily distinguishable from the instant case. In *Snyder*, the Michigan Court of Appeals based part of its holding on the fact that a plaintiff in a grocery store could be too "distracted by product displays and promotions, or preoccupied with the search for the desired product" to notice a puddle on the ground. *Snyder*, 1997 WL 33353547 at *2. Here, a picture of the airport terminal where Plaintiff fell, shows an open area with no such distractions that could be present in a grocery store. (Def.'s Mot. Summ. J. Ex. C.) Additionally, Plaintiff does not allege facts stating that she was distracted in any way when she fell, and therefore, *Snyder* is not an appropriate case to apply here.

Finally, Plaintiff cites *Drumm*, in which the Michigan Court of Appeals ruled that an oily condition, on which cleaning absorbent granules had been poured, was not open and obvious as a matter of law, because the granules made the oil spill look exactly like the rest of the ground, which was covered with salt. *Drumm v. Birmingham Place*, No.

---

[4] The Michigan Court of Appeals has in fact later issued an opinion in direct contradiction with the *Snyder* holding. *See Hickey v. Adler's Foodtown, Inc.*, No. 236036, 2003 WL 1689620 (Mich.App. Mar. 27, 2003) (holding that a puddle of water in a grocery store is open and obvious to a shopper as a matter of law).

252223, 2005 WL 658920, at *1-2 (Mich.App. March 22, 2005). This is yet another case in which the plaintiff testified "he was looking forward *and down* while he was walking *but he was unable to discover* the oil spot . . . ." *Id.* (emphasis added). Here, as this Court has stated multiple times in this opinion, Plaintiff was not looking at the ground but straight ahead when she slipped and fell. Additionally, in Plaintiff's case, the airport floor was not covered with some sort of product, like salt, which would camouflage the spill. For these reasons, the Court finds *Drumm*, inapplicable to this matter.

Furthermore, the Court noted in a recent opinion that clear spills, even those which may blend in with a glossy floor as in Plaintiff's case, are open and obvious as a matter of law. The Court held:

> [a] Michigan court confronted with the evidence in this case would likely conclude that the condition was open and obvious as a matter of law. In multiple unpublished opinions, Michigan courts have readily concluded that a puddle or accumulation of [a clear substance such as] water is an open and obvious condition which does not give rise to premises liability. *See, e.g., Brownlee v. General Motors Corp.*, No. 252867, 2005 WL 2086139 (Mich.App. Aug. 30, 2005); *Bukowski v. Kendall*, No. 251420, 2005 WL 563343 (Mich.App. Mar. 10, 2005); *Pllumbaj v. Consolidated Management, Inc.*, No. 248295, 2004 WL 2451940 (Mich.App. Nov. 02, 2004). Indeed, ordinary puddles generally are discoverable upon casual inspection. For example, in *Hickey v. Adler's Foodtown, Inc.*, No. 236036, 2003 WL 1689620 (Mich.App. Mar. 27, 2003), the court found that a grocery store could not be held liable where one of its customers slipped and fell on a five-foot in diameter puddle of water while shopping. The court concluded that the hazardous condition was open and obvious, despite the plaintiff's argument that the shiny floor tiles made the puddle invisible. *Id.* at *5.

10

*Luzier v. Sears Roebuck & Co.*, 2011 WL 2960630, slip op. at *5 (E.D. Mich. Sept. 11, 2009). The consistency of the Michigan Courts and the factual discrepancies between Plaintiff's cited authority and her complaint leave no doubt in the Court's view that the spilled substance in this matter was open and obvious as a matter of law.

Because the substance on the airport terminal floor was open and obvious, Northwest owed no duty of care to Plaintiff, and the Court need not address the arguments regarding Northwest's notice and response time to clean the spill. *See Lugo,* 629 N.W.2d at 386 (2001).[5]

Although Plaintiff argues that the condition on the airport floor was *not* open and obvious, she also argues that the condition had special aspects, creating an unreasonably high risk of severe harm and qualifying the condition as an exception to the open and obvious doctrine. Similar to the plaintiff in *Njoku*, Plaintiff here misunderstands the special aspects exception. As the Court held in *Njoku*:

> The special aspects exception applies to dangers that *are* open and obvious, but so dangerous that they pose an unreasonable risk of severe harm despite their open and obvious nature. *Lugo*, 629 N.W.2d at 387. Examples of open and obvious conditions that have special aspects include a flooded

---

[5] Even if the Court were to consider Plaintiff's argument regarding notice, the only evidence presented is an alleged statement made by a woman who appeared to be an employee of a nearby restaurant. Danny Minton, who provided assistance to Plaintiff, testified that the woman told him that "she had told someone to clean that up twenty minutes ago." (Minton Dep. 22:12-15, Oct. 11, 2010.) Plaintiff has provided no further evidence that the woman was Defendant's agent with delegated duties of responsibility in regards to cleaning spills, and as Defendant correctly argues, such a statement is inadmissable hearsay and cannot be used to raise an issue of fact to oppose a motion for summary judgment. *See North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997); Fed R. Evid. 801(d)(2)(D), 802.

11

> building with only one exit, making evacuation through the water unavoidable, and a thirty foot pit in the middle of a parking lot, which poses a significant threat of injury or death despite the pit being open and obvious. *Id.*

*Njoku*, 2011 WL 1458002, at *6. Plaintiff's special aspects argument is in direct conflict with her position that the condition was not open and obvious. Plaintiff additionally fails to provide any authority or explain how the slippery condition in her case bears any similarity to the known examples of severely dangerous conditions. *Lugo*, 629 N.W.2d at 387.

## V. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Northwest's October 29, 2010 motion for summary judgment [Dkt. # 14] is GRANTED.

Let judgment be entered accordingly.

                                     s/Gerald E. Rosen
                                     Gerald E. Rosen,
                                     Chief Judge, United States District Court

Dated: April 26, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 26, 2011, by electronic and/or ordinary mail.

                               s/Ruth A.Gunther
                               Case Manager
                               (313) 234-5137